UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TRAVON HOWARD,

Plaintiff,

-against- 6:25-CV-243 (LEK/CBF)

CITY OF UTICA, *et al.*,

Defendants.

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On February 25, 2025, Plaintiff commenced this action against Defendants Mary Bowee, Erin E. Donovan ("OCA Defendants"), and others. *See generally* Dkt No. 1. On August, 29, 2025, Plaintiff filed an Amended Complaint, which the Court accepted. Dkt. No. 70. ("Complaint"). On January 9, 2026, Plaintiff additionally filed a Motion to Amend, Dkt. Nos. 120, 121 ("Motion to Amend"), which the Court has yet to act on.

On October 10, 2025, the OCA Defendants filed a Motion to Dismiss. Dkt. No. 91 ("Motion"). On January 9, 2026, Plaintiff filed a response in opposition, Dkt. No. 122 ("Response"), and on May 26, 2026, the OCA Defendants filed a reply. Dkt. No. 174 ("Reply"). On June 9, 2026, Plaintiff filed a sur-reply. Dkt. No. 179 ("Sur Reply").

## II. BACKGROUND

The following allegations are set forth as contained in the Amended Complaint. Plaintiff rented an apartment in Utica, New York from Defendants VK Real Estate, Inc., and Vasiliy Korogoda ("VKRE" or "Landlord"). *See* Compl. ¶¶ 31, 33. Plaintiff and "Vasiliy, individually and as owner of VKRE, entered into an oral month-to-month lease agreement." *Id.* ¶

47. "Upon taking possession, [Plaintiff] discovered severe habitability issues, including cockroach and rodent infestations, broken windows, inadequate heating, and faulty plumbing and electricity." *Id.* ¶ 64. Plaintiff "repeatedly informed the Landlord of these conditions between September 2022 and August 2024." *Id.* ¶ 65. However, the "Landlord failed to remedy the conditions." *Id.* ¶ 66.

"The Landlord repeatedly demanded rent payments while ignoring [Plaintiff's] ongoing complaints about uninhabitable conditions." *Id.* ¶ 84. "On or about March 8, 2023, the Landlord initiated the first eviction proceeding in the City Court of Utica." *Id.* ¶ 91. However, Plaintiff and the Landlord on April 4, 2023, "executed a written lease" and his tenancy continued. *Id.* ¶ 55. On September 7, 2023, the Landlord "initiated a second eviction proceeding . . . seeking to remove [Plainitff] from the premises despite having actual notice of ongoing hazardous and unlawful housing conditions." *Id.* ¶ 94.

The second eviction proceeding was dismissed on the grounds that the Landlord Defendant had failed to "pursue mediation before initiating any eviction-related action against [Plaintiff]" as was required in the lease. *Id.* ¶¶ 46, 60 (providing transcript from the second eviction proceeding). Subsequently, the Landlord Defendant initiated a third eviction proceeding. *See* Dkt. No. 70-1 at 10–11. A bench trial occurred on June 5, 2024. Compl. ¶ 294. The Plaintiff was unsuccessful, and the City Court Judge issued a Judgment in the amount of $11,000 along with a Warrant of Eviction. *See* Dkt. No. 70-1 at 10–11.[1] Plaintiff alleges that he was unlawfully evicted on August 2, 2024. Compl. ¶ 207–246.

[1] Page number citations refer to the pagination generated by CM/ECF, the Court's electronic filing system.

With regards to the OCA Defendants, Plaintiff made a series of allegations that they had engaged in misconduct relating to his eviction proceedings. *See id.* ¶¶ 274–98, 310, 362. He specifically alleges that Defendant Bowee "deliberately failed to notify him" of the dismissal of the second eviction proceeding. *See Id.* ¶ 275. He also alleges in the Complaint that Defendant Bowee "made an unauthorized phone call to the City Marshal" inquiring about the status of Plaintiff's eviction notice. *Id.* ¶ 276. In the Complaint, Plaintiff further alleges that Defendant Bowee made a misleading statement and improperly rejected papers when she asserted that "tenants could not file counterclaims in landlord-tenant proceedings." *Id.* ¶ 277. Plaintiff additionally alleges that Defendant Donovan fabricated a record of missed-court proceedings. *See id.* ¶¶ 278–92. Finally, Plaintiff alleges that the OCA Defendants intentionally altered and corrected a transcript as well as papers that Plaintiff attempted to file. *Id.* ¶¶ 293–98.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Id.* at 679.

## IV. DISCUSSION

The OCA Defendants in their Motion argue that Plaintiff's claims against them should be dismissed as barred by absolute quasi-judicial immunity.[2] Mot. at 8–11. The Court agrees.

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). As a result, it cannot be "overcome by allegations of bad faith or malice." *Id.* Instead, as long as the judge's action is judicial in nature he or she will be immune if that action is "not taken in the complete absence of jurisdiction." *Huminski v. Corsone*, 396 F.3d 53, 75 (2d Cir. 2005).

The Supreme Court has instructed courts to apply a two-prong test to determine whether a given act is judicial in nature. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "First the court must consider whether the function is normally performed by a [judiciary employee]" and

[2] The Court acknowledges that the OCA Defendants bring their Motion to Dismiss under Rules 12(b)(6) and 12(b)(1). As then-Judge Ketanji Brown Jackson has stated "absolute judicial immunity is a non-jurisdictional bar to a claim asserted against a [member of the judiciary] stemming from official judicial acts and is thus subject to dismissal under Rule 12(b)(6)." *Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), *aff'd*, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015). Accordingly, the Court will only assess the OCA Defendants' claim for quasi-judicial immunity under Rule 12(b)(6).

"second, the court must assess whether the parties dealt with the [judicial employee] in his or her judicial capacity." *Huminski*, 396 F.3d at 75 (cleaned up).

"A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges, and their supporting staff are afforded absolute immunity." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). Further, administrative acts "arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F. 3d 204, 210 (2d Cir. 2009). And indeed, the Second Circuit has held that "actions [that] pertained to the management of [a] case and appeal" are judicial in nature. *Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021) (summary order).

This framework applies with equal force to judicial employees. As the Second Circuit has recognized, "[t]he concern for the integrity of the judicial process underlying the absolute immunity of judges also is reflected in the extension of absolute immunity to 'certain others who perform functions associated with the judicial process.'" *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 192, 200 (1985)). The Supreme Court has accordingly instructed courts assessing whether a certain employee is eligible for absolute immunity to adopt a "functional approach" wherein "immunity flows . . . from the nature of the responsibilities of the individual official." *Id.* (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985)).

The Second Circuit has held that a judicial clerk who assists "the judge in carrying out judicial functions [is] covered by the doctrine of absolute immunity." *Id.* at 40 (citing *Oliva v. Heller*, 670 F. Supp. 523, 526 (S.D.N.Y. 1987). Various courts of appeals have likewise found court clerks to be absolutely immune "where they were performing discretionary acts of a judicial nature." *Id.* (citing *Scott v. Dixon*, 720 F.2d 1542, 1546 (11th Cir. 1983), *cert denied*,

469 U.S. 832 (1984); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981); *Denman v. Leedy*, 479 F.3d 1097, 1098 (6th Cir. 1973)).

Here, Plaintiff alleges that the OCA Defendants engaged in misconduct related to the management of court dockets, issuance of notices, and preparation and management of court documents. *See* Compl. ¶¶ 274–98, 310, 363.

All of these allegations refer to conduct that is not only quintessentially judicial in nature but was without a doubt performed in the scope of the OCA Defendants' positions. *See id.* The management of a docket, communicating with court personnel relating to an active case, producing notices, and managing papers and pleadings from parties are all judicial acts. *See Huminski*, 396 F.3d at 76 (citing *Rodriguez*, 116 F.3d at 66); *Bliven*, 579 F.3d at 210.

Both of the OCA Defendants are therefore eligible for absolute judicial immunity. As a Clerk of the Court performing discretionary acts of a judicial nature, Defendant Bowee is eligible for absolute immunity to the extent that she was performing judicial acts. *See Oliva*, 839 F.2d at 39. Defendant Donovan is likewise eligible for absolute immunity while she was assisting judges in carrying out judicial functions. *See id.* at 39–40 (citing *Oliva v. Heller*, 670 F. Supp. 523, 526 (S.D.N.Y. 1987)).

Plaintiff in opposition argues that the OCA Defendants are not immune "merely because [of their status as] court employees, nor are state officers absolutely immune from personal liability under Section 1983 . . . by virtue of the 'official' nature of their acts." Resp. at 9. He additionally suggests that the fact that the employees were sued in their "personal capacities" negates the OCA Defendants' immunity argument. *Id.* In support of this proposition he cites *Hafer v. Melo*, 502 U.S. 21, 31 (1991). As Plaintiff notes, that case involved a personal capacity claim against a state executive officer. *Id.*

That case is entirely inapposite. In contrast to the instant case, *Hafer* dealt with a state executive officer performing purely administrative functions, whereas here the OCA Defendants are employees of the judiciary and are engaged in judicial acts. *Compare Hafer*, 502 U.S. at 29, *with* Compl. ¶¶ 274–98, 310, 363. The Court is thusly not persuaded by Plaintiff's argument that a personal capacity lawsuit can pierce judicial immunity in this case.[3]

As both of the OCA Defendants were eligible for immunity, and as established above were engaged in judicial acts, the Court finds that they are immune from suit. Accordingly, the Court grants the OCA Defendants' Motion to Dismiss.

## V. Motion to Amend

Finally, in the interest of judicial efficiency, the Court will dismiss Plaintiff's Motion to Amend, as moot. Plaintiff's proposed Amended Complaint intermingles allegations against the OCA Defendants as well as the remaining Defendants. *See generally* Motion to Amend. Thus, to reduce confusion among the parties, the Court grants Plaintiff leave to amend his Complaint to include allegations only against the remaining Defendants. The complaint Plaintiff may file shall not include claims against Defendants Bowee and Donovan.

Plaintiff should be aware that Rule 8 requires that a complaint should contain "***<u>short</u>*** and plain statement[s] of the claim" that he is entitled to relief. Fed. R. Civ. P 8(a)(2) (emphasis added). Indeed, "[i]t is well within the Court's discretion to dismiss [a] pleading pursuant to Rule

---

[3] The Court acknowledges that Plaintiff has made additional argument against immunity in his Sur-Reply, namely that the Defendant's "refusal to carry out mandatory clerical functions and the obstruction of access to judicial proceedings" constitute a denial of access to the Courts, a claim under which judicial personal do not enjoy immunity. *See* Sur Reply at 2–9. As "new arguments may not be made in a reply brief," and this principle applies with even greater force with regards to sur replies, this Court will not consider these arguments. *See Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999).

8 for its length alone." *Rubin v. New York City Bd. Of Educ.*, 2023 WL 1972729 at *9 (S.D.N.Y. Jan. 6, 2023).

## VI. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the OCA Defendants' Motion to Dismiss, Dkt. No. 91, is **GRANTED,** and it is further

**ORDERED,** that Plaintiff's Motion for Leave to Amend, Dkt. No. 120, is **DENIED**, and it is further

**ORDERED**, that Defendants Mary Bowee and Erin E. Donovan are **TERMINATED** from this action, with prejudice; and it is further

**ORDERED**, that the Court *sua sponte* grants Plaintiff fourteen (14) days to file an Amended Complaint, if he wishes to do so; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 21, 2026
Albany, New York

LAWRENCE E. KAHN
United States District Judge